Case number 16-1101 Flyers Rights Education Fund, Inc. Doing business as Flyers Rights, Org. Doing business as Powell Hudson Petitioner v. Federal Aviation Administration, et al. Mr. Sandler for the petitioner, Ms. Schoen for the respondent. Good morning. Good morning, and may it please the Court. Joe Sandler for Petitioner Flyers Rights. In this case, the Federal Aviation Administration declined to undertake a rulemaking to address what, as a matter of common sense, would appear to be a significant safety concern for airline passengers, and that is the effect of decreasing seat size and legroom on the ability to evacuate an aircraft safely in case of an emergency. We talk about legroom. The technical term that you see in the briefs and in the materials is pitch, which refers to the distance between a point on a seat and the same point on the seat immediately in front of you. We recognize that agencies have wide discretion to decide. Can I ask a technical question about that? Sure. I would have thought the most relevant information would be the distance between the front of one seat and the back of the other, not the front of one seat and the front of the next seat. Is there some other measurement that gets that exact space between the front of your seat and the back of the seat in front of you? That seems to be different from pitch. Is there something, some name for that? I don't know. Isn't that the relevant space? That's the common measurement is that distance. And we recognize that agencies have wide discretion to decide whether to institute rulemaking proceedings and that it is a matter within the agency's expertise. But this Court still requires that an agency adequately explain the facts it relied on in declining to issue a new rule and that the facts have some basis in the record so that this Court can determine whether there is a reasoned basis for the agency's decision. And in this case, the FAA has not adequately explained why it isn't planning to take any action to address the potential safety risk because the facts it's supposedly relying on are not part of the record in this proceeding. Just to push you a little bit on this, Mr. Sandler, assume that the agency had not adverted to these studies. And I think you might concede this in your brief. You think they could have just said, given all the priorities that we have, this is not high on our list. And they get into difficulty because they make a factual assertion that then they don't have any evidence to support. Is that right? In part, Your Honor. In fact, if they had just relied on priorities, they would still need to give some factual reason as to why those priorities involve more critical matters of safety than this one. They would say, well, we don't have reason to believe from reports from passengers, from reports from airlines, from anything you've submitted, that other than sort of the logic about deep vein thrombosis and stiffness, we don't have any just anecdotal reason yet to think this is a deep problem. And we have a lot of other things on our plate. That seems like that would be something that we would not have any basis to question. Well, if they refer to studies and information, they have studies and information. That I understand to be your position. It's because they refer to studies and information that said we covered that, we've looked at it, we don't see the risk. That's the nub of your case, right? It is the nub of our case. Yes, but have they just said, well, we've never even thought of it. We've just sort of made an a priori determination, which in effect they did, that even though it's a matter of common sense, people struggle to get out of the aisle, to catch the next flight or to meet the people that are greeting them, the a priori have determined that there's no way that can be a factor. Although an agency's a priori, I think we can presumptively say they're getting information or not. And the very fact that whatever information just in the course of business they may or may not be getting is putting issues on the radar screen and other issues not. So we can assume that if there really were a serious problem, they would have reason to know about it. Well, we don't think you can assume that because to the extent that they have said, well, we've evacuated aircraft to 28 inches. The aircraft demonstrations, first of all, in many cases they don't even require a physical demonstration. It's a computer simulation. But they can't point to either a physical demonstration or a computer simulation where this factor has been taken into account. They say it has, but it's secret evidence. They can't show us the study. And, again, in that regard, it really doesn't make sense why that information would be proprietary, why it would reveal proprietary design criteria of aircraft and the like. But even so, it's common, as this Court is so well aware for an agency in that situation, to redact information as they do routinely in response to Freedom of Information Act requests and in rulemaking proceedings. Can I clarify the contours of your position? Is it just that they need to test because seat pitches have gotten smaller, or that they need to test in a way that reflects both that seat pitches have gotten smaller and passengers have gotten bigger? Exactly. It's both, Your Honor. In fact, there's a fundamental change in the circumstances under which they, in the past, have declined to regulate seat size and legroom. And that is exactly what Your Honor said. Mr. Chairman, you say a fundamental change, and I know that's one of the triggering circumstances for explanation, but there wasn't a regulation on this before, was there? That's right. So I guess the question is, if there's no baseline from which a change is being made, how can you say there was a fundamental change? A fundamental change in the factual predicate for any sort of, again, a priori assumption that this doesn't make a difference. When you have seat sizes shrunk to this level and legroom shrunk to this level, and no limit, there is no limit on the extent to which the airlines can keep shrinking seat size. But is it a fundamental change? It's just it hasn't, I mean, I think your objection is this should now be on their agenda, and it's not. I mean, if airlines, you know, use latex paint for years and years, but there's no regulation on it, and then they start using oil-based paint, and, you know, somebody notices this is a problem and says you should regulate now, that's not a fundamental change in the sense, I think, that our cases refer to it. This is not a change from a prior regulatory position. Or is it? Are you telling me that it is? It's not a fundamental change if the factor we're talking about doesn't have any logical connection to the issue that we're trying to address. It was a very illustrative hypo because I was assuming that there was some change in terms of aerodynamics or something. If something starts to be noticed as a potential problem for reasons of factual change in the world, but there's no prior regulation, then the decision, how could the next decision of the agency be a fundamental change from a prior state of affairs that didn't include a regulation? That's true. I think it's a question of this is an agency that has a statutory mandate to regulate safety. This is a change in circumstance that raises as a matter of everyone's experience and common sense what would seem to be a safety concern, and the agency is saying, well, we actually have looked at this, but we can't tell you what we found. I bet you there was no regulation saying Samsung Galaxy phones are forbidden from airplanes until in the real world we learned that they were exploding. And if the airlines at that point hadn't said, wow, that's a change in the actual world in which we're operating that's quite relevant to safety, I guess someone could have petitioned and said, can you please ban these things from the airplane, too? Exactly. I mean, had that happened and the FAA declined to act and said, you know, we're not going to ban these Samsung 7 phones because we have other priorities, I think the court would be entitled to see a record that said, well, what more critical safety aspects are there than this, you know, that exploding planes? And, again, it's the absence of any reason basis in this record that's the concern here. Have you submitted a FOIA request for these tests, and why isn't that your proper remedy? It is definitely a potential remedy. It would be an alternative remedy. Completely agreed. We think that though that the agency had an independent obligation in this case, when it writes a letter saying, you know, we have studies that show this, we have information that shows that you can evacuate safely even at these extremely reduced seat sizes and leg room, that they have an obligation to provide the information as part of the record. That's a process argument. It's a process argument. You're entitled to make it. But your aim here, at least as the brief portrays it, is really to increase airplane safety. So I guess I would have thought you'd be going on all fronts. I'm just curious as to why. You don't have to answer, but I'm just curious. I'm just curious to me that no FOIA request has been submitted for these. Right. I mean, I think that's a very fair question, partly a matter of the organization's own priorities, to try to get a more, to at least put a freeze in place on the airline's ability to continue to reduce the seat size without limit until the agency can take a determined and reasoned look at it. I wonder if you would address the standing of your client to sue. Yes. We believe there are two clients here. There is Flyers Rights Education Fund, which represents airline passengers, that have expressed to the organization and in comments in this actual proceeding their concern about passenger safety. There was a large man who couldn't assume the crash position, couldn't follow the flight attendant's instructions because the seat size didn't allow it. We think that Flyers Rights, in terms of those passenger concerns, has representational standing. And then the president of Flyers Rights, Mr. Paul Hudson, who was one of the petitioners, is a frequent flyer, not a mere detached observer, but a frequent flyer in his own right who has significant concerns and fears about this and has some expertise in it as well. Concerns and fears I don't think are clearly enough. So you have to have some more concrete injury now. Well, I think when passengers observe and know, and in the case of Mr. Hudson, because of his personal involvement, he sits on one of the advising committees of the FAA, concerned that they see this dramatic shrinkage in seat size and leg room. And struggling to get out of the aisles, it's a reasonable concern to determine, well, has the FAA required the airlines to take this into account in the evacuation? All these detailed criteria and procedures in the evacuation administration. So I'm just saying, I think Food and Water Watch, other cases of our court have said, you know, just because you're taking kind of prophylactic action because of your concerns, reasonable or not, that is not alone the kind of harm that would support your standing. Now, I know that your individual client has said, I've been on flights, I've been uncomfortable. Well, more than uncomfortable, concerned about safety with reason. The reasonable anxiety or concern, just bear with me and assume that that isn't enough and we'll obviously, you know, have to make a legal determination on that. But assume that concern, however reasonable concern risk, isn't enough, whether it's under CLAPR, whether it's under Food and Water Watch, but that there has to be something more concrete and imminent. He's a frequent traveler. He's said, you know, I'm stiff, I'm uncomfortable. But he hasn't said I'm stiff and uncomfortable more so now that the seats are smaller. Maybe I'm stiff and uncomfortable in the same size seats because I'm getting older. So I'm just trying to sort of hone in on what the harm is that you're alleging. We think he's saying that he is more, not just uncomfortable, but maybe more unsafe because of the dramatic decrease in seat size and leg room and that it should not be necessary, as the Court said in other cases, for there to be an actual crash, an emergency where this has to be tested in order to raise the issue of whether the FAA should address it. As the Court said in the Safe Extensions case, a person disclosing a substantial interest in an order issued by the FAA may apply for review of the order. So we think there is both association on the individual standing here now. Thank you. Could I just ask you, do we have an affidavit from the man who's... Do we have an affidavit from the man who's overweight and had trouble getting out of his seat? Not an affidavit. There are included in the record the comments of a number of air passengers who participated in the docket and the request for the rulemaking, but it's not – those are comments, not sworn testimony. Not sworn testimony. But you know the name of this man, right? Yes. These are comments on the record. All right. And he is a member of the organization. I don't know if he's a member of the organization. They responded to announcements of the petition being filed and so forth to participate, but I don't know if he has taken any other action. What I'm getting at is this court has in the past held that where the court is having a concern about our jurisdiction and the issue goes to standing, we have permitted supplemental affidavits to be filed. And that's really my question. If we were to pursue this, would your organization be in a position to file that type of affidavit to show more than simply what I'll call emotional concern? Yes, absolutely. You can certainly get affidavits from these commenters and others to that effect, Your Honor. Thank you. Thank you. Good morning. Excuse me. Let me try that again. Good morning. May it please the Court. Karen Schoen on behalf of the government. Whether to initiate a rulemaking is a decision committed largely to the agency's discretion. And here the FAA, which is charged with ensuring aviation safety, reasonably declined to engage in a rulemaking here. As this Court has made clear, the scope of review is very narrow, and the Court has also said that it's only in the rarest and most compelling of circumstances that this Court has overturned an agency's judgment not to initiate a rulemaking. And there are no such compelling circumstances here. The agency reasonably determined that there was no immediate safety risk here and made a reasonable decision not to initiate a rulemaking. Because they had these studies? Well, one of the reasons they pointed to in their letter, Your Honor, is that evacuation demonstrations have been successfully conducted by manufacturers in the process of certifying aircraft. Those evacuation demonstrations have been successfully conducted down to 28-inch pitch, which is the lowest pitch cited by petitioners. And we know that because the agency has told us. Yes. But we don't know that, in fact, this has occurred because the information is proprietary? Some of the specific results and details of the demonstrations are proprietary to the manufacturers. But let me just be clear about what these are, because these are evacuation demonstrations that are done as part of the certification of a model aircraft. They are required to be done, and it is an evacuation of the maximum number of passengers to be certified for that model aircraft. They must, along with the required number of crew members, they must evacuate from the plane to the ground under simulated emergency conditions within 90 seconds. And the FAA prescribes a number of requirements and conditions under which these demonstrations must be conducted. I understood that argument. Okay. So your regulations go to number of passengers and the width of the aisle. The width of the aisle, the number and type of exits, the size of exits, the placement of exits, emergency lighting. If I am a large, large person sitting in a middle seat that is 28 inches wide and I can't get out, have the simulations addressed that? Well, the demonstrations have been run down to 28-inch pitch. With large, heavyweight people? These are with real-world people. These are volunteers. Often they are employees of a manufacturer who are naive, which means they've never done this before. So could I just ask you, following up on Judge Pillard's question, if the agency had simply answered in the way her question suggested without any reference to these studies, is it the agency's position there would be no basis for any action by this court other than to deny the petition? Yes, Your Honor. I think that would have been sufficient. You know, if the agency has discretion to set its priorities, you know, it has a lot of expertise in this area. This is something that the FAA takes very seriously. You know, evacuation is an important concern. They've issued a number of regulations meant to ensure that people can evacuate. They monitor real-world incidents when there are accidents or other emergency situations when people have to, in the real world, evacuate the aircraft. There have been other studies, and there are these evacuation demonstrations. And the agency just has a lot of institutional knowledge on this, and they have to take that into account and then, you know, prioritize other. There are a lot of other safety issues, like the phones catching on fire and other things that they need to think about and be addressing. Would that be a changed circumstance? I don't think there are no—I'm sorry, Your Honor? Would that be a changed circumstance under our law, even if there hadn't been a prior regulation, that suddenly in the real world something becomes a known risk that wasn't a risk before, if the airlines hadn't banned? Yeah, I mean, you know, I don't know if that would technically be a changed circumstance or not, but I think certainly the FAA would need to consider that if there were evidence. But, you know, I also want to point out petition— Wait, so the FAA—the petition here involved Samsung phones exploding because the FAA, for whatever reason, just wasn't dealing with it. Your position is that they said, hey, hey, it's all over the news. They're exploding all over the place. I see people using them on airplanes. Please, you should ban them as a safety risk. That would be a petition you would have to respond to? I think the FAA would need to give some reasons for why it was denying. Could it say what Judge Pillory said? We don't think in our judgment that it's a problem. We have a lot of other things on our plate. Would that have been sufficient? I guess it would depend on what the evidence was. The evidence is all the newspaper articles and news stories about exploding Samsungs and maybe even a Samsung recall. You know, I think probably there would be a little bit more of an explanation required, but I think that's a very different situation than we have here because petitioners speculate that it could hinder passengers' ability to evacuate the plane, but they offer no evidence of that, no reason to believe that. The studies that you put into the record said, J.A. 8 to 9, that recommendations in the past had included things like seating density. And another study on J.A. 13 talked about some folks who couldn't move from their seats being relevant. So don't your own studies recognize that this ability to extricate yourself from the seat and the row have got to be relevant to egress safety? Seating density refers to the number of seats per exit. It's not necessarily how close the rows are together, so that's just a term that's referring to something different. But, you know, what the agency has found is there have been these— What about they couldn't move from their seats? I'm sorry? What about finding it relevant when people couldn't move from their seats for whatever reason? And where is that, Your Honor? It was J.A. 13. I'm sorry, but the ability to people move from their seats is— I don't know there if it might have been people density or something that caused it. Yeah, I'm not sure what that was referring to. I think that was a different issue. No, but my point is— Some of those are things that are studied. But I think what they have found through these studies is that, actually, sort of the bottleneck and the difficulty is once you're out of your seat in the aisle, there's a queue that forms in the aisle. And so the slowness and what sort of becomes a bottleneck and makes the evacuation—what the evacuation speed is chiefly dependent on is the ability to move through the aisle and then actually exit out of the exit door or— That may be chiefly— That might be chiefly the problem. Yes. But doesn't, again, doesn't it make just common sense that your ability to get out of your own seat, to move from your seat, it's going to become— If we care about how much space there is for the exit rows, for obvious reasons, you need even more space there. But it's just—isn't it logical that space and the ability to move are what it's all about for egress? It certainly could be relevant. And we're not going to suggest that this could never, ever have an impact and there might be a time when the agency decides this is something they need to regulate. But at this point— I'm a little bit confused by your position because you— I take it that you asserted that, of course, there were studies, in fact, that airlines can't fly unless they've succeeded in each model in doing the evacuation within 90 seconds, right? And so there is, in fact, factual predicate supporting the assertion that was made on the record in this case, right? Yes, that's correct. But those studies have not been submitted. That's correct. And I think there's no need to, frankly. I mean, what this Court has explained in—well, first of all, let me just distinguish. This is a decision not to engage in rulemaking, which this Court has very clearly distinguished from a rulemaking. And there's not the same obligation to build a record that there is had the agency engaged in a rulemaking. We have to be able to determine that the facts on which the agency relied have some basis in the record. Well, but the agency— So hypothetically, this following through, take the cigarette case. The question was, you know, is smoking dangerous? And the cigarette companies keep telling the FDA it's no problem here. What I'm getting at is the question, I'm a manufacturer of airplanes or an owner, and obviously I want to get as many people in these seats as possible in terms of the bottom line. So when the agency makes this representation to the Court about what the studies show, we're not sure what the studies show. So you say there's proprietary information. So my question is, the agency hasn't said you could not ask the manufacturers to submit the material in a form that could be shared or submit it to the Court under seal. But is your position that even though you relied on this information in deciding not to pursue a rulemaking, there is no obligation to provide a record for the Court? Well, yes. I think our initial point is that there is no obligation here. One of the things this Court explained in WWHT, for example, is that where the agency decides not to proceed with rulemaking, the record for purposes of review need only include the petition for rulemaking, comments pro and con where deemed appropriate. And look at page 817. I'm sorry? Look at page 817. That's where it says the Court has to be able to determine that there is some basis in the record. Right. But then it also said that the record may only be the agency's explanation of its decision to reject the petition. But the agency relied on studies. Right. And that's all you have to say? Right. Well, let me be clear, too. These are not just some studies that someone else has conducted. These evacuation demonstrations are conducted by the manufacturer, but the manufacturer has to submit a plan, a certification plan, a plan about the demonstration to the FAA, which the FAA reviews and approves. The FAA observers actually witness the evacuation demonstration. So the FAA has first-hand knowledge about these. I mean, it would be interesting if the Court were told all of this. I'm sorry? We were not told all of that. Well, we explained in our brief how the demonstrations were. But not in denying the petition for rulemaking. In other words, your brief says, don't worry, we've got this under control. All right? But in responding to the petition for rulemaking, you said, we have these studies, and here are three of them. Well, the petition for rulemaking also referred to the evacuation demonstrations and explained that in both the initial letter and the follow-up letter, explained that these evacuation demonstrations have been successfully conducted, explained sort of what these demonstrations are in that multiple menu. 28-inch seats with overweight people. It did not refer specifically to overweight people. But the way these evacuation demonstrations are done are very prescribed in great detail in the regulations. So Appendix J to Part 25 of the regulations prescribe in very great detail how these evacuation demonstrations are supposed to be conducted. I understand, but there is this concern about people having large portions. Right. This is something sort of new. And they used to have seats that were bigger. Or they'd be in the first row. And now it's more of a problem. And my question is, are these evacuation studies up to date? The demonstrations require that they be conducted with a representative passenger load. There's a breakdown. They specify a minimum percentage of women, of men, of people over 50. So it's meant to be a representative cross-section. Over 230 pounds? That I can't speak to, Your Honor. No, that's my point. You can speak to it. The petitioners, at least, are claiming that this is a problem. And counsel represented that they could get an affidavit for us saying an overweight man couldn't get out of his seat, basically. And so that's my question. In terms of your position is, as I understand it, that where it's a denial of a rulemaking, basically the court needs to take the agency's representations on their face. And that is the end of the court's inquiry. Well, I think especially with something like this, Your Honor, what's relevant here is the fact that they have been conducted. Had they been in the record, I don't think it would really alter the court's analysis. But you've already admitted that you don't know whether these evacuation studies have included a 250-pound person with 28-inch seats. And that's all I'm trying to understand. That's their complaint. And maybe the agency decides it just doesn't want to deal with it. But the agency took the position that we have studies that show that this is not a problem. Well, I think if the challenge is to the way these demonstrations are conducted, then that's a very different question, right? Because then what they're really challenging is the FAA's regulations regarding these evacuation demonstrations. Do you want us to rely on these evacuation studies or not in ruling on this case? Well, I think you can rely on the statement in the agency's letter explaining that one of the reasons it doesn't see an immediate concern is that these evacuation demonstrations have been conducted down to 28 inches. So you want us to consider the FAA's representation that studies that we're not showing you have been done that address exactly the concerns that are raised by the rulemaking petition. That's your position? You want us to consider them without putting them in the record? I mean, I'd like you to consider everything that the agency said in its letter denying. Do we need to consider the evacuation studies, or do you think it would be sufficient without? The FAA's response would have been sufficient without that. I think the FAA's response would have been sufficient. I mean, what they said was . . . It would have been sufficient without referencing those studies, under your view. I think the agency did explain. They explained that they didn't see an immediate safety concern. You know, the petition was very . . . The petition offered no reason to think there is a safety concern. I understand your point about . . . Your position in your brief was, look, we have all this guidance, we have these regulations, we've covered everything. And the petitioners basically say, but have you covered this concern of ours? And the agency's response was, yes, because the manufacturer has done these evacuation studies, which FAA has approved. Here are three studies. And then you say, well, there's other information, but it's proprietary. So where are we? That's a concern, and I know you don't want to answer these questions, and I appreciate you don't want us to write an opinion that says the agency conceived it. But, I mean, Judge Millett's question, it seems to me, you have to answer that. Do you want to rely on those studies or not? I mean, we'd like you to rely on what the agency said in its denial letter. I think if . . . So that answer is yes. Yes. And, I mean, if you . . . I mean, seriously, counsel. Yes. I'm sorry, I'm not trying to be evasive. Maybe I'm just misunderstanding the question. I apologize, Your Honor. No, our question was very clear. Do you want us to rely in resolving this petition on the studies . . . On the fact . . . That the agency identified in its second letter in response to the petition? Or even on the conclusion that you drew. I think what you're saying is you're an expert agency, you did what you typically do, you drew a conclusion, and absent a reason to think that you were somehow ignoring your duty, we should rely on that. Is that your position? I think that's exactly right, Your Honor. Now, look at this . . . Excuse me. Go ahead. Would you answer my question? Would you mind repeating that? Because I'm sorry, now I'm a little confused. Which was Judge Millett's question. Yes. In denying this petition, is the agency relying on the studies that it identified in its second response to the petition? Okay. When you say studies, it's the other study, the other FAA studies that we included in the appendix,  I think that's where I'm getting a little confused. The proprietary ones. The evacuation demonstrations. Do you want us to rely on that? I would like you to rely on the fact that they have been successfully conducted. Even though you don't know, in representing the agency, precisely what the benchmarks were. When you say benchmarks, I can tell you that they were a representative cross-section of people. The regulations require that they be a representative passenger load of people in normal health. Presumably, if it's taking a pool of people, there will be some . . . So, if I'm the manufacturer, I've got men, I've got women, I've got old, I've got young, and I've got everybody who's under 140 pounds. No, I mean, seriously. Yes. Would that satisfy the regulations? I confess, Your Honor, I don't know if that would be considered representative or not. I honestly don't know the answer. You don't know if they require height and weight? Because there's also a commission of concerns that really tall people can't even assume the crash position anymore. Well, with respect to that, Your Honor, that's actually not true. There are different crash positions meant to reflect the fact that people are different size and build. And so . . . Are all those crash positions equally good? Or did we come up with a plan B for the people who can't do what everyone's been doing all along for a crash position? Yeah. I don't know. There is an advisory circular that addresses that. It's 121-24C. And the FAA has several different crash positions for people. I think they discuss women who may have an infant, tall people, smaller people. And so, taller people are supposed to rest their head on the seat in front of them. So, here's our difficulty, Ms. Schoen. You rightly point out that the FAA is an expert agency. And we consistently, and I think rightly and are required by law, to defer to that expertise. We also, though, as an institution, have a responsibility, which is simply to make sure that there is a reasoned explanation in the record. If you look at our case, the American Horse Protection Association versus LING, which is also a decision not to initiate rulemaking. There, the industry says, reviewed studies, or no, actually, this is the agency said, reviewed studies, the Deputy Administrator, and other materials relating to these soaring devices that are used on the horses. And on the basis of this information, I believe the most effective method of enforcing the Act is to continue the current regulations. Very parallel to the situation you're in now, we don't want to do the regulation that the petitioner is asking. We've looked at the studies. We're an expert agency. Our court said, no, you can't just give us the conclusion. We know you're expert, but we have, and it's minimal. We're not going to get in there and rethink everything because, you know, we're not the experts, but we do have an obligation to look at it and see, does it follow? And you're not giving us anything on which we can do that. I'd like to make two points, Your Honor. First, I would like to distinguish that case because there, if I recall correctly, the agency had offered up some inconsistent positions. I think they may have said some things that were a little different sort of after the fact, a post hoc rationalization versus the explanation they had originally given in denying the petition. And I think, if I recall correctly, there was also a new study that maybe cast some doubt or maybe may have at least given reason to question some of the factual predicates of the reason that the agency was given. And we don't have any of those circumstances here. I mean, I think the agency has always been very consistent in explaining why it denied the petition. And there's no new study or anything to cast a doubt on what the agency has said. So I think that case is very distinguishable. I mean, the other thing, you know, if this is really something that the court is concerned about, you know, we didn't think it was necessary, but we could certainly provide affidavits from the FAA, you know, sort of explaining these evacuation demonstrations and attesting to the fact of how they were conducted and what the results were. But not the studies on some kind of closed docket or in-camera basis? I guess, you know, my only hesitation there is that my understanding and the way the FAA has explained this to me is that the certification plan and some of the other things that would be part of this, like a schematic of the plane of the interior configuration, the FAA reviews that and approves it. But those documents often physically reside with the individual manufacturers. The FAA has a right to inspect and right to access, but they generally do not physically have all of those documents. So sort of my first offer is, you know, if a declaration from the FAA would suffice. If not, then I guess we need to endeavor to procure these materials and try to submit them perhaps for in-camera review. I think the bigger question is, are they first on the rulemaking record? And then when we would look at it after the fact, we would be able to assure ourselves that the agency had adequately assured itself. You see what I'm saying? So procedurally, we're a little late in the day, I think, for that to be an adequate remedy. Because it should be that in the rulemaking record you have something that tells them, you know, we have this data, it's in this secret docket because it's proprietary information, but we have it and this is kind of what it is. Right. I guess, I mean, I'm not sure I see that only because the FAA did actually refer to these evacuation demonstrations. So this wouldn't be something that, I mean, they said that's what they're relying on. So it's not a question of, well, you didn't know they were really relying on that. I mean, they, I mean, I think we can, I would hope we can presume that they, you know, knew what they were saying and were honest and representing what they have and what they know was conducted. And so, you know, we would just be sort of confirming that as opposed to offering something. Just to be clear, you were saying there were some aspects, I thought you were saying there were some aspects of these tests that you don't have, like schematics. But do you have the test results, a test report, something in your possession? I don't know if there are physical, I don't know if there are any physical documents residing with the FAA. I would have to try to get more information on that. Thank you. Thank you. Thank you. Just three, a couple of quick points. To the extent that they don't even have the test documents reflecting the test results of these evacuation studies, it would be hard for court to credit that the agency has, again, as a reason, basis, if it's not something they even obtain and keep in their files. Why is that true? I mean, there's a lot of regulatory schemes in which the regulations require your airlines or drug companies to keep records available for inspection and test records and things like that. They don't all have to get sent into the government's hands. And we don't say that you're necessarily unreasonable in your decision making because you allow the proprietary owners to keep possession of information about their products. It would be hard to imagine how this agency could say that it's done its job to ensure that it's enforcing its own regulations and all these detailed criteria, albeit not with seat size and leg room, for conducting emergency evacuations when they don't have any record at all for a particular aircraft that a test was conducted and what the results were. What if the FAA said, hi, this is Ms. X. She's in charge of going and observing these tests when conducted by airline companies. She's been to five. They have consistent with regulations tested with 28-inch pitch seats with people from a variety of size, age, and body types, and found, supervised, and agreed with their assessment that safe egress can occur at 28 inches. Wouldn't that suffice? We wouldn't have to actually have the records, would we? I think there would have to be some. For this stage. It would be difficult. That would raise pretty significant concerns if that observer from the FAA had no record, had no notes, there was no agency record that they'd be complied. We're not reviewing a rulemaking here. We're just reviewing a decision not to make a rulemaking. I don't know that we're going to start requiring an elaborate record, are we? I think that our understanding of what the agency's position here was that there are it wasn't that they didn't have the records, but that they have the records, but the information was proprietary, but maybe that's not sufficiently clear in the record. Let me ask if given what the FAA has said, maybe some of the information they don't have, maybe some of it's proprietary, even if we were able to see it, there's obviously a separate concern about your ability to challenge the conclusion that they have based on it. And I'm guessing it would make a difference to you whether they have, for example, taken into account the actual average size of flyers. So what would you need short of the actual studies, chapter and verse, and the actual diagrams, chapter and verse, that you think would allow you to challenge? Do you need the protocols, the criteria? I think the actual, well, I mean, we understand there are videos that have been taken that the agency itself may have, but something basically that there's a record showing the basics of the configuration of the aircraft with respect to the criteria specified in the regulation, and including the size and pitch of the seats in each class of passenger service. And we have to do that for every aircraft? And the results of the test, whether they made it, everyone was able to get out in 90 seconds under those conditions. You understand all the problems of trade secrets and that type of thing, don't you? I mean, that's why I'm trying to understand what we're doing in this. This is not a rulemaking. It's the agency's heard you. It said, we have all this regulation. First of all, it said, your basic premise is wrong. All right? We're not into health. Go talk to the health person. All right, no, no, I'm serious about that. That's where you started. All right, then you came back and said, no, no, I'm going to look at safety. And the agency says, we've covered the roadmap on safety. And that's not what you're challenging, in the sense of you haven't said our regulations on safety need to be changed. All right? So now we're into the we. And that's what I'm concerned about. You know, in the prosecutorial side, Heckler v. Cheney, you didn't get any of this background information about why the prosecutor decided not to go forward. So here the agency says, you know, we've got a lot of priorities. We've got these exploding telephones, cell phones, et cetera. And we think our safety regulations are adequate. And if you don't like them, petition to amend those. Whereas the health issues, you know, you're talking to the wrong administrator. Well, first of all, with respect to the health issues, we think the agency, and this is in our briefing, has misconstrued its own statutory authority. No, I know. I know. But you basically abandoned that when you got to your reply brief and you tried to argue they're all in. But I'm just trying to understand what the court's role is, the Judge Pillard question. And when she tried to get you to respond, you basically said you want the manufacturer to turn over all its records. At least those that it showed to the FAA. And I thought, wait a minute, what are we getting into here? Your Honor, we want the FAA to turn over its records to this court because the administrative record of any agency decision has to include the factual basis for it in a way that the court can determine whether it exists. So we received an affidavit from whoever the person in the FAA is who has responsibility for overseeing these evacuation studies. And that sworn affidavit said, you know, I, Jim Jones, have all this qualification. And I'm, and the bottom line is these evacuation studies have adequately addressed seat size and pitch in a manner that is consistent with the FAA's regulation. Is that sufficient? It would not be sufficient, but it would be sufficient if they said either I observed or people under my supervision observed the following situation and this was the result. That would be a different story. I don't understand that. I'm assuming there are many paragraphs to this affidavit, but they're not going to tell you that, you know, the Boeing plane versus Grumman plane and things like that. They're not going to get into what I'll call trade secrets about how we configure our seats and, you know, how we get more passengers than the other guy, that sort of thing. Well, the time it takes to evacuate aircraft with a certain configuration, including seat size and pitch, can hardly be itself a trade secret. The court said in the safe extensions case that an agency's declaration of fact that is capable of exact proof but is unsupported by evidence is insufficient to make the agency's decision non-arbitrary. You're talking about denial of rulemaking. Right. That's what I'm getting at here. Well, denial of rulemaking, there still has to be a reasoned basis. And to the extent there's a factual basis for it, the court has to be able to see what the factual evidence that was relied on. We have a sworn affidavit from an official in the administration telling us what his or her qualifications are. I mean, we do this all the time in the FOIA context. We take these affidavits and basically defer to them. We're not getting all the background information. It depends on how conclusory the affidavit is. Well, I understand that. But, I mean, my point is what you're suggesting is you really want the raw data. Well, just enough data, again, so that the court can satisfy itself, yeah, these tests were conducted taking this criteria into account. And, therefore, the agency discharged its duty to consider safety. My second question would be, suppose you're interested in criteria one and two. But the evacuation tests that have been developed in a manner consistent with the FAA safety regulations do not include those elements. That, again, the agency would have to have some explanation as to why that factor isn't considered a safety factor. They have this. There are studies in the Certified Administrative Record that the FAA says, well, these factors, these studies show what factors we've tested that do affect evacuation times. But none of those studies have considered the factor of seat size and leg room. And just a final point with respect to Your Honor's reference to the agency has discretion to set priorities to be sure. But we would ask the court to contrast this situation with the decision, for example, in the Wild Earth Guardians case where the EPA said we have other priorities and air pollution rules. And they set out a detailed basis of why these other rules that they had prioritized would cut air pollution more than the one that petitioners was asking for. So here we just have a conclusive statement. It's not consistent with our priorities. We respectfully submit that's insufficient. Thank you. We'll take the case under advisement. Thank you.
judges: Rogers, Millett, Pillard